## WINNE *vs.* REYNOLDS.

Where the vendor, upon a contract for the sale of a farm in the manor of Rensselaerwick which he held under a lease from V. R. at a nominal rent of a pound of wheat, containing a reservation of mines and minerals and water privileges and a preemptive right of purchase, covenanted to give to the purchaser a good and lawful deed of the premises; *Held,* that the reservation of the nominal rent was no objection to the title; and there being no mines or minerals or water privileges on the premises, and V. R. having agreed to relinquish his preemptive right of purchase, of which the vendee had notice at the time of making his contract to purchase, a specific performance was decreed.

The court of chancery will not decree the specific performance of a contract to purchase, where the vendor is unable to give a valid title to the premises, unless it appears from the contract that the understanding of the parties was that the purchaser should take the risk of the goodness of the title which the vendor was to give.

But a specific performance will be decreed when the vendor is able to perform his agreement in substance, although there is a trifling variation in the description of the premises, or a trifling incumbrance on the title which cannot be removed, which is a proper subject of compensation to the purchaser.

It is no valid objection to the title of a vendor that the conveyance under which he holds the premises contains a reservation of mines and minerals and water privileges, if from the evidence there is no reason to suppose there are any minerals or water privileges on the premises.

As the law does not regard trifles, a reservation of a pepper corn, or any other rent which is merely nominal, is not a valid objection to the title of the vendor, who holds subject to the payment of such nominal rent.

But a restriction upon the power of alienation, in the nature of a quarter sale or other substantial fine upon alienation, or the reservation to the original owner of a preemptive right of purchase for a certain length of time, is an incumbrance which diminishes the value of the title. And a purchaser who has contracted to purchase the premises without notice of the existence of such an incumbrance, will not be compelled to take the premises subject thereto without a proper allowance therefor.

Where there are trifling incumbrances upon the title, which were known to the vendee at the time he contracted to purchase, a specific performance will be decreed without compensation, although by a mistake of the scrivener they were not excepted in the written contract of sale.

Whether a covenant by the vendor to give to the purchser a good and lawful deed of the premises relates to the form of the deed or to the goodness of the title conveyed thereby? *Quære.*

THIS was an appeal from a decree of the vice chancellor April 4. of the third circuit. The complainant was the owner of a

farm of 127 acres in the county of Albany, under a lease in fee from Stephen Van Rensselaer, at a nominal rent of one pound of wheat annually. The lease also was in the usual form of the Patroon's modern leases, containing a reservation of mines and minerals and streams of water and water privileges, with the preemptive right of purchase, and the payment of a year's rent upon the purchase by any other person. In March, 1834, the complainant entered into an agreement with the defendant to sell him the farm on the first of April, for the price of $2700; of which sum $800 was to be paid down and the residue secured by bond and mortgage. While the parties were negotiating for the sale and purchase of the farm and before the bargain was concluded, the complainant, upon an inquiry as to what title he would give, said he would give a deed as good as any of the Van Rensselaer deeds were; and he thereupon showed to the defendant the lease from Van Rensselaer under which he held the farm. At his request the complainant also commenced reading the lease, and read that part which contained the reservations of mines, water privileges, &c. and of the nominal rent, when the defendant told him it was unnecessary to read any further as he knew how the Van Rensselaer deeds run. By the verbal agreement between the parties the defendant was to have the privilege of paying the residue of the purchase money, except the $800 which was to be paid on the first of April, in ten annual payments with annual interest. But in reducing the agreement to writing it was so drawn by the scrivener that the amount to be secured by bond and mortgage would become payable with interest whenever the vendor might think proper to demand it. And the complainant was by the terms of the written agreement to convey to the defendant by a *good and lawful deed*, on the first of April: although by the verbal agreement the deed was to be subject to the conditions in the lease from Van Rensselaer. The parties, at the time the written agreement was executed, verbally agreed to meet at the store of J. L. Winne, on the first of April, to execute the writings to complete the sale and transfer of the farm; and that the scrivener who had

drawn the written agreement and witnessed the same, should prepare the deed and bond and mortgage which were then to be executed. The writings were prepared accordingly, and on the first of April the complainant signed and acknowledged a deed conveying the farm to the defendant, subject to the terms and conditions of the lease from Van Rensselaer, and with the usual covenant of warranty. He went to the place appointed for the consummation of the sale according to the agreement; and not finding the defendant there he went to his house for the purpose of making a tender of the deed, but the defendant kept out of the way. The agent of the Patroon waived the receipt of any back rent, as the rent was merely nominal and no account had been kept upon the books relative thereto: the agent also dispensed with the preemption offer to Van Rensselaer; which the Patroon afterwards ratified by a writing signed by him. There were no mines or minerals upon the farm, and no stream of water except what ran in an artificial ditch dug for the purpose of draining the land in wet seasons. At the hearing the defendant's counsel moved to expunge a part of the complainant's testimony. But the notice of the application was not given in time and the motion was denied with costs. And the vice chancellor thereupon decreed a specific performance of the written agreement; with the right to the defendant to elect whether to have his bond and mortgage payable on demand or in ten annual payments from the first of April, 1834. He also declared and decreed that the deed which the complainant signed and acknowledged on the day when the writings were to have been executed, and which he then attempted to deliver, was such a deed as the defendant had no right under the agreement to refuse; and that such deed be delivered to the defendant upon the performance of his part of the agreement. The defendant was also charged with the costs of the litigation. From the whole of the vice chancellor's decision, as well upon the motion to suppress testimony as upon the merits of the case, the defendant appealed.

*J. King & W. W. Frothingham,* for the appellant.

*J. Rhoades,* for the respondent.

The Chancellor. There was no reason whatever for appealing from the decision upon the motion to suppress testimony. Only two days notice of the application was given when the rules of the court required four. This of itself would have been a sufficient reason for denying the motion even if the testimony had been irrelevant. Most of the evidence objected to, however, was proper, upon the supposition that the legal effect of the written instrument was as contended for by the defendant's counsel; as it went to show that there was no difficulty in obtaining a release from the patroon so as to make a perfect title, if the defendant had attended on the first of April, according to his agreement, and had put his refusal to complete the purchase upon that ground. Time was not made a material part of the contract. And if the agreement had in terms required the complainant to give a perfect title in fee of the premises, free from every condition whatever, this court would have decreed a specific performance upon his obtaining a full release of all the covenants and conditions in the lease from Van Rensselaer. This testimony, tended to prove that the defendant was acting in bad faith, by attempting to take advantage of what he supposed to be a technical defect in the title, which was not expressly provided for in the written agreement, although perfectly understood by both parties. If the decree, therefore, had directed a specific performance only upon condition that the complainant procured a full release from the patroon, this evidence was sufficient to show that the defendant should be charged with the payment of the costs. Had he intended to avail himself of this technical objection, and at the same time to save himself the costs of a uselsss litigation, he should have attended on the first of April at the place appointed and insisted upon a strict performance of the written contract notwithstanding the parol understanding of the parties that he was to take the title as conveyed to

the complainant by Van Rensselaer. If he had done this and the vendor had not been able to procure a release from the patroon so as to be able to make a perfect title free from all reservations or conditions within a reasonable time, the complainant would have proceeded in this suit at the peril of costs ; although he had finally succeeded in consequence of being able to make a good title at the time of the decree. As it is, however, the appellant is only entitled to defend himself here upon his strict legal rights; as this testimony shows that he has no equity in his defence, and that the respondent is entitled to a decree for a specific performance, even upon the appellant's construction of the agreement, if the release of Van Rensselaer can now be obtained. The only question therefore, is, whether the vice chancellor should, upon this evidence, have directed a reference to a master to ascertain whether such a release could not be obtained so as to enable the complainant to make a perfect title, or whether he was right in decreeing that the deed of the first of April, 1834, was such an one as the defendant was bound to accept without such a release; as from the evidence it may fairly be presumed that the patroon would execute such a release without hesitation if it should be necessary. He would unquestionably have done it at the date of the deed if the defendant had then put his refusal to perform the agreement on the ground which he afterwards took in his answer.

In the case of *Gazely* v. *Price,* (16 *John. Rep.* 268,) the former supreme court of this state decided, how correctly I will not undertake to say, that a covenant to give to the purchaser *a good and sufficient deed* of premises contracted to be sold, was to be considered as complied with, at law, by the execution of a conveyance good in point of law to pass to the purchaser whatever title the vendor had in the premises sold. And that court adhered to such decision in the subsequent case of *Parker* v. *Parmalee,* (20 *Idem,* 130,) where the covenant was to execute *a good warrantee deed of conveyance of the lot.* Without stopping to inquire whether this is the correct construction of such a covenant, according to the intention of the parties, where there is

nothing to show that the terms of the covenant were intended to apply to the form of the conveyance and not to the sufficiency or validity of the title, it may be considered as a settled principle of the court of chancery that it will not lend its aid to compel a purchaser to take a conveyance which does not convey such a title as he supposed he was contracting for at the time he entered into the agreement; unless there is something in the case to show that it was the understanding of the parties that he was to run the risk as to the validity of the vendor's title. But a specific performance may be decreed if the complainant is able to perform his agreement in substance; although there is a trifling variation in the description of the property, or a trifling incumbrance on the title, which cannot be removed but which may be the subject of compensation. (*Magennis* v. *Fallon*, 2 *Moll. Rep.* 588. *King* v. *Bardean and wife*, 6 *John. Ch.* 38.)

The reservation in the patroon's lease to Winne of mines, minerals and streams of water, &c. was not intended to cover any thing of the kind which was supposed actually to exist upon or in this land. But this reservation, as well as the nominal rent and the pre-emptive right of purchase which is contained therein, arose from the circumstance of the grantor's agent taking a blank lease to fill up for the purpose of making the conveyance, and to save himself the trouble of writing an absolute deed. The legal construction of the instrument, however, must be determined from its actual contents. And I only refer to these circumstances to show why such reservations of minerals and water privileges are found in the conveyance of a lot of land upon which nothing of that kind was supposed to exist. There is no evidence to show the existence of minerals upon the lot; and as the testimony shows there were no such streams or runs of water as contemplated by this reservation, the reservation itself forms no valid objection whatever to the complainant's title. The defendant might as well object to the title on the ground that the original grant from the crown contained a reservation of the royal mines of gold and silver, which may, by a bare possibility be contained in

the bowels of the earth within the limits of this farm. The reservation and provisions of the lease when examined together, show clearly that the runs and streams of water, and the lands under the same, which were intended to be covered or included in such reservation, were only such natural streams as were susceptible of a beneficial use for milling purposes. The artificial ditch which the owner has made for the purpose of draining his land, is not, therefore, within the reservation, even if the waters which run in it at some seasons of year were capable of being used for manufacturing and other hydraulic purposes. The objections to the title, if any, must, therefore, rest upon the grantor's pre-emptive right of purchase for twenty-one days after notice ; and the reservation of the nominal rent of one sixtieth part of a bushel of wheat.

As the law does not regard trifles, the reservation of a pepper corn rent, or any thing else which is merely nominal, is not an objection to the title which could justify a court in refusing a specific performance, even where the defendant had contracted to purchase without any notice that such nominal rent was reserved. And the year's rent, or one pound of wheat which is reserved in the nature of a fine upon the alienation of the property, is, if possible, of still less consequence than the annual reservation of a pepper corn as rent upon a lease in fee. The pre-emptive right of purchase, however, is a partial restriction upon the power of alienation. It is a remnant of feudal vassalage which a freeman would not be willing to have his land subjected to, although the actual injury to the owner of the land would amount to very little in a pecuniary view. In this case, therefore, if the defendant had in terms contracted for the conveyance of a perfect title, without notice of the existence of such a clause in the lease, I should not compel him to take the title of the complainant without compensation for this injury, unless the vendor should be able to procure a release of this condition so as to make a clear title.

There is no doubt, however, from the testimony, that the defendant knew of the existence of this covenant in the

lease at the time he contracted to purchase the land. And he either expected to take the title subject to the conditions of the patroon's conveyance, or he intended to commit a fraud upon the complainant by insisting upon this technical objection to the title afterwards. It appears that the conveyance to Winne, except as to the amount of rent, was in the usual form of the patroon's conveyances for lands in his manor. And as the defendant saw it was one of the printed leases, and according to his own declaration knew how those conveyances usually ran, he must have known, or at least supposed, it contained this pre-emption clause. The scrivener who drew the agreement of the 6th March, also says that he was to draw the deed to Winne subject to the conditions in the patroon's deed. The case, therefore, comes directly within the principle of the decision of the late Chancellor Kent, in *Ten Broeck* v. *Livingston*, (1 *John. Ch. Rep.* 357.) There a specific performance was decreed, although there was a rent reserved upon the premises, not mentioned in the agreement; but of which the defendant had notice previous to his entering into the agreement. It is evident that the defendant, under the decree in this case, will have the same title which he expected to obtain when he entered into this contract with the complainant. And as the evidence of the previous knowledge of the defendant of the state of the title does not contradict any thing contained in the agreement itself, the vice chancellor was right in decreeing a specific performance without requiring the complainant to make any compensation for the supposed defect in that title, or requiring him to procure a release from the patroon.

The decree appealed from must therefore be affirmed with costs.