### Isaac C. Holmes *vs.* John C. Holmes.

A tender has a definite, legal signification. It imports not merely the readiness, and an ability to pay the money, to deliver over the deed, or the property, at the time and place mentioned in the contract between the parties, but also the actual production of the thing to be paid, or delivered over, and an offer of it to the party to whom the tender is to be made.

A money tender means an offer to pay in specie, and in the description of coin made current by the act of congress.

Under a plea of tender, however, the party is not required to prove a literal and actual compliance with all the requisites of a legal tender, in order to maintain the issue. He may prove his averment by showing an offer to pay in bank notes which were not refused on account of the character of the medium; or he may show that when about to produce the money, or thing to be tendered, his adversary told him it was unnecessary, and that he would not accept it; or any other act, or declaration, by which some of the formal requisites of a strict legal tender were dispensed with.

The obligations of the parties to an agreement for the sale of land are mutual, where one of them is to convey and assure the title, and the other is to execute and deliver a mortgage, and pay the residue of the purchase money. Their covenants are dependent; for, the conveyance, and the securing and payment of the purchase money, are to be simultaneous acts.

When there is an existing capacity, in the party who is to convey, to give a good title, his obligation is not perfect until the party who is to receive the conveyance, produces and offers to pay the purchase money.

But where there is an entire absence of the capacity to give a good title, no such production and offer is required.

The actual offer of the money may be waived, by express words, spoken at the time; such as a direction not to produce the money, or any other language amounting to a refusal to receive it; because a tender, or offer, after such a refusal, would be a mere idle and nugatory act, which the law will not require in any case.

The tender may also be dispensed with by acts without words. The omission of the vendor to attend at the time and place appointed for the consummation of the contract; his alienation of the estate to some other person; his suffering a judgment to be taken against himself, for an amount greater than the value of the property, and his omission to have it released or satisfied of record; his inability or neglect to discharge the estate from any other cloud or incumbrance; can not be regarded in any other light than an absolute waiver; because the production and offer of the money, in the face of any of these facts, would be an act utterly nugatory, and which must be unattended with any useful results.

A contracting party who suffers the subject of the contract to be charged with incumbrances of his own creation, or to remain charged with those created by others, in breach of his contract to assure a good title, as fully and effect-

Holmes *v.* Holmes.

ually waives and relieves the covenantee from the actual production and offer of the purchase money, as he could do by the use of express words, or by any other means within his power.

When the party contracting to convey has, at the time when the conveyance is to be made, either no title, or a title which is defective, any condition precedent, such as tendering, or paying, or securing the purchase money, need not be fulfilled by the other party to the contract.

There is nothing illegal or unreasonable in the parties to an executory contract settling in advance, by their mutual agreement, at any amount upon which they may agree, damages uncertain in their nature, to be paid by the party failing to perform his contract.

The amount of damages to be recovered, when so liquidated in advance by the terms of the contract, is not to be diminished; neither is it to be enlarged.

THIS was an action brought to recover $1000 as stipulated damages for the breach of an agreement for the sale of land. On the 10th of January, 1850, the plaintiff and defendant entered into an agreement, under seal, by which the defendant agreed to sell the farm he then resided on, in the town of Hyde Park in the county of Dutchess, to the plaintiff, for the sum of $70 per acre, and that he would, on the first day of May, then next, at the county clerk's office in the town of Poughkeepsie, between the hours of eight o'clock A. M. and six P. M. on receiving from the plaintiff the sum of $70 per acre, at his own cost and expense execute a proper conveyance for conveying and assuring the fee simple of the said premises to the plaintiff free from all incumbrances, which conveyance should contain a general warranty and full covenants. And the plaintiff agreed that he would on the said first day of May, then next, at the place above mentioned, and at the time therein set, and on the execution of such conveyance, pay unto the defendant the sum of $70 per acre as aforesaid. And it was further agreed between the parties that the defendant should retain the possession of the property, until the first day of April then next, when possession should be delivered to the plaintiff. And the defendant did thereby acknowledge the payment by the plaintiff of $1000 in part payment of the premises, and did further agree to take a bond and mortgage of $6000, as so much of the purchase money, at six per cent, payable in one year from the first day of May

Holmes *v.* Holmes.

then next. The last clause of the agreement was in these words : "And it is understood that the stipulations aforesaid are to apply to and bind the heirs, executors and administrators of the respective parties, and in case of failure, the parties bind themselves each unto the other in the sum of one thousand dollars, which they hereby covenant to fix and liquidate as the amount of damages to be paid by the failing party for his non-performance." The plaintiff in his complaint stated the making of the agreement, that on the first day of April, 1850, he took possession of the premises, removed his family, and his household furniture to the house thereon, and proceeded to cultivate the farm, repair the fences, &c. "and was at great expense and trouble, under and in consequence of said agreement." He also averred, "that on the first day of May he was ready and desirous to fulfill the said agreement in all things on his part. That he attended at the time and place in said agreement mentioned, and offered and tendered to the said defendant the payments in and by the said agreement specified by a bond and mortgage as mentioned therein, of $6000, and the payment of the residue in cash." He further alledged that the defendant did not perform the agreement on his part; that he could not convey a good and perfect title in fee to said farm, free of all incumbrances ; that he had not at that, nor any subsequent time, nor at the time of filing the complaint, a good and sufficient title in fee to the said farm of land, free of all incumbrances, but on the contrary the same was subject to various defects, and in particular to a lease, made by him to the trustees of a school district for the erection and use of a school house, and to the inchoate right of dower of the wife of one Valentine Baker, (who was then still living as well as his wife,) in and to the said premises. The plaintiff also stated that he had ever since been ready to perform the contract, but that the defendant did not execute nor perform the same, nor had he been ready to do so. He also stated that the payment of $1000, stated in the agreement to have been made by him to the defendant, was by a promissory note for that amount made by the plaintiff, payable on the first day of May, 1850, and indorsed by his father, Wheeler C. Holmes, and which was

negotiable, and was delivered to the defendant and accepted by him for said payment of $1000, upon the execution of the agreement. He further alledged that the note still remained in the hands of the defendant, and prayed that he, the defendant, might be ordered by the court to deliver up the note or cancel it. He also prayed that the defendant might be adjudged to pay him, the plaintiff, his damages, by reason of the non-performance of said contract, to the amount of $1000, as fixed and liquidated by the parties as the damages to be paid by the defaulting party for a breach of the agreement; and for such other and further relief, as the nature of the case might require, and as might be agreeable to equity and good conscience.

The defendant, in his answer, admitted the agreement as stated; denied that the plaintiff entered into the possession of the premises at the time specified in the agreement, but alledged that he took possession about the first of March, 1850; denied the alledged tender by the plaintiff; but on the contrary averred that the plaintiff at and prior to the first day of May aforesaid, declared himself unwilling to perform his part of said contract, alledging as an excuse for such unwillingness, that he had agreed to give too much, or $5 per acre too much for said farm. The defendant also denied each of the specifications in the complaint, that he did not perform the agreement on his part, or that he could not convey a good title; denied defects or incumbrances in the title; denied the inchoate right of dower of the wife of Valentine Baker in or to all or any part of said farm; denied that the plaintiff had always been ready to perform, or that he, the defendant, had not been ready to perform. The defendant admitted that he had executed to the trustees of school district No. 5, in the town of Hyde Park, a lease of a small spot of ground on said farm next the highway, being about 32 feet by 36 feet, (composed chiefly of rock, and worth only about two dollars,) so long as it should be used for a district school house, and for no other purpose whatever, of which the plaintiff had full notice, and requested such spot to be embraced in the survey and description contained in the deed to be given under such contract, but to be conveyed subject to such lease and the privileges

Holmes *v.* Holmes.

granted thereby, and that in pursuance of such request, he the defendant prepared, and with his wife executed and acknowledged in due form of law, and tendered to the plaintiff on the first day of May, 1850, pursuant to said contract and request, a proper deed of all said farm, conveying the same to the plaintiff in fee simple, free from incumbrance except said lease, and that the plaintiff refused to accept such deed, and refused to perform and did not perform his part of said contract; and he the defendant claimed damages from the plaintiff to the amount of $1000 by reason of the non-performance by the plaintiff of his part of the contract, " that sum being fixed and liquidated thereby as the damages to be paid by the failing party for his non-performance." The defendant admitted that he yet held the note for $1000 mentioned in the complaint, and had never parted with or negotiated it, and averred that it had never been demanded of him by the plaintiff, or any one on his behalf. He also averred that the plaintiff, between the 1st of March and the 1st of May, 1850, cut and used and sold off from the said farm a quantity of wood and timber, and injured the meadow and grass lands, &c. to the damage of at least $100, which he claimed from the plaintiff, in addition to the $1000 claimed as damages. The plaintiff replied, denying, in effect, all the statements in the answer.

The cause was brought to trial at the Dutchess circuit in March, 1851, before Mr. Justice Barculo, a jury in the cause having been waived by both parties. On the trial it appeared that the parties met at the court house in Poughkeepsie, at the time appointed in the agreement, attended by their respective counsel; that the counsel for the defendant stated that they offered the deed on their part to the plaintiff, who objected to receive it, because he alledged there was a school house lot to which the defendant had not title; also that an inchoate right of dower of Mrs. Baker was not conveyed; that the plaintiff said he had a mortgage there, and was ready to perform on his part, and offered the mortgage to the defendant; his counsel said he had the money ready, and asked if it would be necessary to get specie, and the defendant's counsel said, " No, I suppose not;" no money was produced there; and it was stated

that the plaintiff could get specie from the bank if it was required; it did not appear that any thing was done to waive the production of bills; something was said about postponing the business until next morning; it was towards night; the plaintiff declined to wait; the defendant's counsel was then negotiating for the purchase of the right of dower; when the parties were about to separate, the defendant's counsel asked the plaintiff the true reason why he would not take defendant's deed when offered to him; the plaintiff hesitated an instant, and drew himself up and said, " I think I am paying about five dollars an acre too much for the land;" $100 had been offered on behalf of the defendant for the dower right; $150 was asked for it. It also appeared on the cross-examination of one of the plaintiff's witnesses, that he was present on the first of May, 1850, with the parties at the court house; that no money was produced or shown on that occasion; that the defendant said he would give an indemnifying bond against the prior incumbrance, and the mortgage should not be paid until the title to the land was clear; the plaintiff said it ought to have been done before; the defendant's counsel said it should be done if the plaintiff would wait until the next morning; that the witness, (who was the defendant's father,) had a conversation with the plaintiff in June, 1850, when the plaintiff asked him what was done with the place? Witness said that his son Allen had bought it, but that witness had a right to sell it, and he, the defendant, could get it yet; and told him that he would not take it on the first of May, for fear of the Baker claim. The plaintiff then said that was not the reason; he had paid too much for the place, and somebody had told him wild carrots were on it. He then asked witness what he would take for it? Witness told him that he would throw off $500; the plaintiff did not say he would or would not; he went off and was gone an hour, and then said if the witness would throw off $500, and the note the plaintiff had given on the vendue, he would move on the farm tomorrow.

The plaintiff then rested his cause; the defendant moved for a nonsuit; the judge refused it, and the defendant excepted.

The defendant proved by a witness that he drew the deed

Holmes *v.* Holmes.

offered to the plaintiff, and surveyed the premises in question. At the time of the survey the subject matter of the school house was talked over between the parties, and it was agreed between them that the school house should be excepted in the deed in a manner agreed upon between the parties, and the deed was in conformity with that agreement. The school house was not fenced in with the farm. Upon his cross-examination this witness stated, that he included the school house in his survey, and that no deduction from the quantity of land was made on that specific account; but that he left out by design other fractions of land, which would, in his computation, fully equal the quantity encumbered by the school house lease.

The facts in relation to Mrs. Baker's inchoate right of dower, as they appeared on the trial, were, that on the first of May, 1842, the defendant conveyed to Valentine Baker, (the husband,) forty-eight acres of the land in the said agreement mentioned, and then Baker, to secure the whole or a part of the purchase money thereof, at the same time, (1st May, 1842,) mortgaged the said forty-eight acres to the defendant for $2000, with interest from that date; but on the 19th of January, 1845, Baker, by a quit-claim deed, for the consideration of $2,300, of which $2000 was recited by the deed to consist of the mortgage which he had so given to the defendant, conveyed the said forty-eight acres back again to the defendant.

The judge subsequently filed his decision in the clerk's office in Dutchess county, by which he gave judgment in favor of the plaintiff for $1000, and the costs of suit, and judgment was docketed thereupon. The defendant appealed therefrom to the general term.

*James Emott,* for the plaintiff.

*Henry Swift,* for the defendant.

*By the Court,* BROWN, J. This is an appeal taken by the defendant from a judgment given against him at the special term. The plaintiff's action is upon an agreement, under seal,

for the sale and conveyance of certain lands in the county of Dutchess. He averred, in his complaint, a readiness to perform the covenants on his part, and "that he attended at the time and place in the agreement mentioned, and offered and tendered to the defendant the payments in and by the said agreement specified, by a bond and mortgage as therein mentioned, and the payment of the residue in cash." This was denied by the answer, and constituted the principal question litigated at the trial. A tender has a definite, legal signification. It imports, not merely the readiness and an ability to pay the money, or to deliver over the deed, or the property, at the time and place mentioned in the contract, but also the actual production of the thing to be paid or delivered over, and an offer of it to the person to whom the tender is to be made. A money tender means an offer to pay in specie, and in the description of coin made current by the act of congress. Under a plea of tender, however, the party is not required to prove a literal and actual compliance with all the requisites of a legal tender, as it is defined in the books, in order to maintain the issue. He may prove his averment by showing an offer to pay in bank notes, which were not refused on account of the character of the medium; or he may show that when about to produce the money, or thing to be tendered, his adversary told him it was unnecessary, and that he would not accept it; or any other act or declaration by which some of the formal requisites of a strict legal tender were dispensed with. Any evidence, therefore, which tended to show that the defendant waived the performance of any of those acts which the law demands, in order to make out a tender, was admisssible under the pleadings, and relevant to one of the principal questions in controversy. (*Douglas* v. *Patrick*, 3 *Term Rep.* 683. *Wright* v. *Reed*, *Id.* 544. *Thomas* v. *Evans*, 10 *East*, 101. *Bac. Abr. tit. Tender*, *B.* 1, 447. *United States Bank* v. *Bank of Georgia*, 10 *Wheat.* 347. *Harding* v. *Davies*, 2 *Car. & Payne*, 77.)

The obligation of the defendant was to execute and deliver, at the time and place appointed by the contract, a proper conveyance, for conveying and assuring the fee simple of the prem-

ises to the plaintiff, free from all incumbrances. The evidence disclosed his entire inability to do any thing of the kind ; for it appeared that a portion of the premises, containing forty-eight acres, were charged and incumbered with the inchoate right of dower of Eugenia Baker, the wife of Valentine Baker, a former owner, and from whom the defendant derived his title. It also appeared that the parties met at the time and place appointed for the execution of the contract, and that the plaintiff had the mortgage then with him, ready executed, for a part of the purchase money, and offered it to the defendant. He also said he had the money ready, and asked if specie was required, and was informed that it was not. The money was not produced and exhibited, or offered to the defendant, and the question occurs whether the omission of the defendant to discharge the premises from Mrs. Baker's inchoate right of dower, and his inability to assure a good title, relieved the plaintiff from the obligation to produce and make an actual offer of the money. The obligations of the parties were mutual. The defendant was to convey and assure the title, and the plaintiff was to execute and deliver the mortgage and pay the residue of the purchase money. The covenants are dependent, for the conveyance and the securing and payment of the purchase money were to be simultaneous acts. When there is an existing capacity in the party who is to convey, to give a good title, his obligation is not perfect until the party who is to receive the conveyance produces and offers to pay the purchase money. But where there is the entire absence of a capacity to give a good title, I apprehend no such production and offer is required. What the books denominate a waiver of any of the formalities of a tender, is but the annunciation of the same rule, under another name. The cases already quoted, show that the production and offer to pay the money, may be waived. In the application of this rule to the common law forms of special pleading, Mr. Chitty, in his treatise, has these directions : "In stating an excuse for non-performance of a condition precedent, the plaintiff must, in general, show that the defendant either *prevented* the performance, or rendered it unnecessary to do the prior act, by his *neglect*, or by his *dis-*

*charging* the plaintiff from performance." (1 *Chit. Pl.* 318.)
The actual offer of the money may be waived, by express words,
spoken at the time. Such as a direction not to produce the
money, or any other language amounting to a refusal to receive
it; because a tender, or offer, after such refusal, would be a
mere idle and nugatory act, which the law will not require in
any case. The tender may also be dispensed with, by acts with-
out words. The omission of the vendor to attend at the time
and place appointed for the consummation of the contract; his
alienation of the estate to some other person; his suffering a
judgment to be taken against himself for an amount greater
than the value of the property, and his omission to have it released
or satisfied of record; his inability or neglect to discharge the
estate from any other cloud or incumbrance; could not be re-
garded in any other light than an absolute waiver; because
the production and offer of the money, in the face of any of
these facts, would be an act utterly nugatory, and which must
be unattended with any useful result. Unless the law, in re-
gard to contracts for the sale of real property, has come to be
a repetition of useless and unmeaning ceremonies, a contract-
ing party who suffers the subject of the contract to be charged
with incumbrances of his own creation, or to remain charged
with those created by others, in breach of his covenant to as-
sure a good title, as fully and effectually waives and relieves
the covenantee from the actual production and offer of the pur-
chase money, as he could do by the use of express words, or by
any other means within his power. When he has no title, or
his title is defective, at the time when the conveyance is to
be made, any condition precedent, such as tendering, paying,
or securing the purchase money, need not be fulfilled. (*Bel-
linger* v. *Kitts*, 6 *Barb. S. C. R.* 273; *Lawrence* v. *Taylor*,
5 *Hill* 107, *and the authorities there referred to.*) I am, there-
fore, of opinion, that the omission of the defendant to discharge
the lands to be conveyed from the inchoate right of dower of
Eugenia Baker, the wife of the former owner, dispensed with
the production and actual offer to pay the consideration money,

Holmes *v.* Holmes.

at the time and place appointed for the consummation of the contract.

The amount of the damages which the plaintiff was entitled to recover, is the only remaining question presented by the bill of exceptions. In the closing stipulation of the contract, the parties have chosen to liquidate and ascertain, in advance, what these damages should be. The case does not fall within that class where the sum fixed is to be regarded in the nature of a penalty. The damages, to the purchaser, in case the vendor failed to execute the deed and assure the title were altogether uncertain, and depended upon considerations which none could comprehend as well as themselves. Their power to contract, in respect to these damages, can not now be controverted. It is settled, upon authority which admits of no dispute, that there is "nothing illegal or unreasonable in the parties, by their mutual agreement, settling the amount of damages, uncertain in their nature, at any sum upon which they may agree." (*Dakin* v. *Williams,* 17 *Wend.* 447, *and the authorities there quoted.*) When the damages to be recovered are liquidated in advance by the terms of the contract, it is a mistake to assume that the party claiming is alone benefited. Such a stipulation may be as beneficial to the party who pays, as it is to him that receives. Both enter into the contract with a full knowledge of all their rights and liabilities. The amount to be paid is not to be diminished, neither is it to be enlarged. Each may estimate the consequences of a breach, with certainty and precision, and deport himself accordingly.

There is nothing in the amount of the damages which requires us to interfere. The judgment must be affirmed.

[KINGS GENERAL TERM, October 6, 1851. *Morse, Barculo* and *Brown,* Justices.]