## GARLOCK *vs.* LANE.

A. contracted to sell 100 acres, about two-fifths in quantity, of his homestead, to B., at $20 per acre; $1000 to be paid and possession given on the 1st of May then next, and " a good warranty deed" to be given on the receipt of the first payment. On the 15th of May, B. gave to A. his note, payable in thirty days, for $175, to apply in part payment of the purchase money, and which the latter transferred to a bank, and B. was sued and compelled to pay it, after it came to maturity. The homestead of A. was mortgaged for $2500 or 3000. There was no proof whether B. had knowledge of this incumbrance at the time of the contract, or not. In August next ensuing after

Garlock *v.* Lane.

the note became due and after B. had been sued upon it, B. asked A. if he would give him a deed "free from all incumbrances;" to which A. replied he could not, unless he would advance him the money to pay the mortgage. On the 1st of May, when the first payment was to be made, a release as to the premises contracted to be sold, was in the hands of the agent of the mortgagee, ready to be delivered on the receipt of $1000. In an action by B. to recover what he had paid on the note, *Held,* he could not recover.

THIS was an action to recover money paid by the plaintiff on a note given by him to the defendant or order, for the sum of $175, payable in thirty days at the Cherry Valley Bank, and dated May 15th, 1845. On the 9th day of December, 1844, the parties entered into a written agreement not under seal, by which Lane agreed to convey to Garlock by a " good warranty deed," to be given " on the receipt of the first payment," the " Allen farm," containing about 100 acres, at $20 per acre. Possession was to be delivered on the 1st day of May, 1845, and on that day $1000 were to be paid, and the remainder as the parties should agree, with interest annually. The agreement stated that the farm had been let for one year, and if the tenant would give up possession on " the first of May," the agreement contained a stipulation in respect to paying him for plowing. A witness testified that in the spring of 1845, on his asking the plaintiff if he had made the defendant a payment for the land, the plaintiff said he had not; that he had been disappointed in getting money, but that he had given, or was going to give the plaintiff a bank note. Another witness testified to an interview between the parties in July or August, 1845, when they had a long conversation; in which the plaintiff told the defendant he had been sued on the note. That the plaintiff gave the note for the purpose of applying it on some land. That the plaintiff had some money and was going to get some of the witness, and let him have a lien on the land. That the plaintiff asked the defendant if he was ready to give him a deed free of all incumbrances, and the defendant said he could not, unless the plaintiff would advance him the money to pay one Taylor of Ohio. The plaintiff replied he could not pay him any thing unless he could clear the premises, and if he did so, he was ready to fulfill the contract. The defend-

Garlock *v.* Lane.

ant said he would like to have a week or fortnight to arrange matters. A note at the bank was spoken of and the plaintiff asked what should be done about that; and the defendant said he need not trouble himself about it, as he, the defendant, would get it renewed, or make some arrangement. He thought he could get one L. to take it out of the bank. The plaintiff complained that the defendant had deceived him about the note, and the defendant denied any such intentions. The plaintiff spoke of the note being sued, and the defendant said he need not trouble himself about it, and he that would get it renewed, or get L. to take it out of the bank. Witness declined to let the plaintiff have the money, under the circumstances, and the defendant wanted a fortnight to try and see what he could do, and he stated that Taylor had a mortgage upon this and other lands. The witness further stated that this conversation was at the defendant's house, in haying time; that he could not say he had $25 with him, nor did he see the plaintiff have any money. That there was something said about paying the whole, and it seemed to him the sum was about $2000. That the plaintiff wanted to get of the witness about $1400; but the witness could not say he then had $100, without collecting it. That he understood the note was given to apply on the contract. The plaintiff had some money, and the rest he was to borrow of the witness; and the witness understood the defendant to say, that he should have to send to Ohio to have a Mr. Taylor cancel the mortgage. The witness further testified that it was stated that an old mortgage had been taken up and another of $2500 or $3000 given. And another witness testified that the defendant's whole farm, including these premises, contained 250 acres, and that his house and other buildings were on the other part of the farm. It was admitted that Taylor, who resided in Ohio, had a mortgage on the farm and against the defendant; and had on or about the 1st of May, 1845, sent a release thereof of that part of the premises contracted to be sold to the plaintiff, to one Little, to be delivered to Lane on his paying $1000. The son of the defendant had been in possession of the farm one year since 1847, and after him two others.

The complaint set out the substance of the contract for the sale of the land, and averred that the plaintiff was ready and willing and offered to pay $1000 on the 1st of May, and to perform said contract on his part; but the defendant did not, and by reason of the incumbrances could not, perform. That the defendant on the 13th of May, 1845, applied to the plaintiff to aid him in raising a sum of money, and both parties were then willing to perform and to be bound by the contract. That when the note was made, it was agreed that if the defendant removed the incumbrances and conveyed the farm according to the agreement and fulfilled in all things, the note was to apply in part payment of the $1000, the first payment. And if incumbrances were not removed the defendant was to see to and pay the note and save the plaintiff harmless. That the defendant indorsed the note and transferred it to a bank. That the defendant had not complied with the agreement to convey, nor paid the note, but the plaintiff had been compelled to pay it. There were also money counts.

The answer took issue denying the material allegations of the complaint, and averred readiness to perform the contract to convey; and alleged that the note was received in part payment of said first payment of $1000. The reply took issue upon the allegations of the answer.

The cause was referred, and the referee reported in favor of the plaintiff for $285,55, on which judgment was entered and the defendants appealed.

*D. C. Bates*, for the defendant.

*T. B. Mitchell*, for the plaintiff.

*By the Court*, HAND, J. I think this report must be set aside. The payment of the $1000, and the conveyance, were to be concurrent acts. (*Johnson* v. *Wygant*, 11 *Wend.* 48. *Weed* v. *Davis*, MSS. 4th Dist.) Neither could recover of the other without performance, or an offer to perform. On the 13th of May, the plaintiff gave his note in part for the first payment.

Garlock *v.* Lane.

The complaint alleges that it was given to aid the defendant to raise money; and that it was to apply on the contract, in case the incumbrances on the land were removed. But all this is denied, and is not proved. The agreement was to give a warranty deed. That is, a deed with a covenant to warrant and defend. If a deed with covenants of warranty had been given, the incumbrances alone would have been no breach of that covenant. There would have been no implied covenant that there was no incumbrance. (1 *R. S.* 738, § 140.) And a mortgagee cannot here maintain ejectment. (2 *Id.* 312, § 57.) In order to maintain an action on a covenant of warranty, in this state, there must be eviction. Though it has been said that it need not, in all cases, be by actual process of law. (*Greenvault* v. *Davis*, 4 *Hill*, 643. *Hunt* v. *Amidon*, *Id.* 349.) In some of the states, it seems to be sufficient that the covenantee purchases the paramount title actually asserted. (*Rawle on Covenants*, ch. 7.) It is difficult to see how the plaintiff could rescind the contract merely on account of the incumbrance, when he would have had no cause of action on the covenants in his deed, if he had received one according to the contract; particularly as the mortgage was on the homestead of the defendant, of which the land contracted was only about two-fifths. No fraud is pretended; nor is it shown that the remainder of the farm was not ample security for the lien. And, under the circumstances, the incumbrance would probably have been no objection to a specific performance. (*Winne* v. *Reynolds*, 6 *Paige*, 407. *Ten Broeck* v. *Livingston*, 1 *John. Ch.* 357. 2 *Sug. V. & P.* 78. *Vane* v. *Barnard*, *Gilb. Eq. Rep.* 6. 14 *Vin.* 352.) The defendant offered to apply the purchase money in payment of the incumbrance; and it was shown on the trial, that the application of $1000 thereof would have released this portion of the mortgaged premises. There was no evidence of fraud, when the contract was made, nor a want of notice to the plaintiff, when he gave the note. Even where the estate is sold free from incumbrances, and they exceed the purchase money, it must be considered that the seller can make good title, and the objection will not avail where the incumbrancer can be brought

in and made to join in the conveyance; or, what is the same thing, discharge the incumbrance. (2 *Sug. V. & P.* 78. 1 *Id.* 445, *last ed. Dart on V. & P.* 131.) If the vendor, by the express or implied terms of the contract, should pay the incumbrance, he must discharge it, before he can compel payment of the purchase money; and the vendee will be allowed in equity to detain it for that purpose. (*Clarke* v. *Vaux*, 3 *Russ.* 320. *Dart on V. & P.* 381, 390.) There are some cases in this court, from which it would seem that the existence of a mortgage would authorize the vendee to rescind. (*Van Benthuysen* v. *Crapser*, 8 *John.* 259. *Judson* v. *Wass*, 11 *Id.* 525.) But in the case first cited there had been a positive refusal to perform; and in the latter, there were covenants for a warranty of title; and the exceptions in the contract also impliedly negatived the idea of any other incumbrance. (*And see Greenby* v. *Cheevers*, 9 *John.* 126.) Properly, for the purpose of bringing the defendant in default, the plaintiff should at least have tendered the money and demanded a deed. (*Fuller* v. *Hubbard*, 6 *Cowen*, 13. *Green* v. *Green*, 9 *Id.* 46. *Smith* v. *Smith*, 25 *Wend.* 405; *S. C.*, 2 *Hill*, 351, *and n. Hudson* v. *Swift*, 20 *John.* 24. *Chitty on Cont.* 275.) In *Carpenter* v. *Brown*, (6 *Barb.* 147,) the plaintiff had fully paid, and the vendor agreed to convey by a certain day. That case must stand, if at all, upon its own peculiar circumstances. As a general rule, the conveyance of land is a more deliberate proceeding than the transfer of other property. In *Holmes* v. *Holmes*, (12 *Barb.* 137,) the premises were to be conveyed free of all incumbrances. No doubt a tender and demand may be rendered unnecessary by a refusal to perform. (*Traver* v. *Halsted*, 23 *Wend.* 66. *Foote* v. *West*, 1 *Denio*, 544.) The plaintiff did not offer to perform on the day, nor did he ever offer to perform; and neither he nor his friend had the money when he said he would pay if he could have a deed free of all incumbrances; and it is not shown that they could have obtained the money. The defendant was then willing that the purchase money should apply on the mortgage; which was just what equity would have done, provided the defendant and not the plaintiff was to pay it; which the

former seems to have admitted. It has been doubted whether, at law, equitable objections to the title would enable the purchaser to rescind the contract. *Boyman* v. *Gutch,* (7 *Bing.* 379,) was assumpsit to recover back the purchase money, and the court put it on this ground—whether the defendant had or had not a legal title to convey?

If the defendant was guilty of any fraud in relation to this incumbrance, or if he has done or omitted to do any thing before the commencement of the suit, that authorized the plaintiff to rescind the contract, the latter may recover; otherwise he cannot. The promise of the defendant, to take care of the note, was without consideration, if it was received to apply on a subsisting contract.

It would seem, from the amount of the report, that it included the costs of the suit against the plaintiff on the note. There were not recoverable, even if the note was loaned. An indorser cannot recover costs in such cases, unless there is an express promise to pay them. (*Simpson* v. *Griffin,* 9 *John. R.* 131.) And an accommodation maker has no greater rights.

The judgment must be reversed, and there must be a new trial; costs to abide the event.

[WASHINGTON GENERAL TERM, May 2, 1853. *Willard, Hand, Cady* and *C. L. Allen,* Justices.]